**Margaret F. MARTIN, et al., Plaintiffs,**

v.

**LIBERTY MUTUAL INSURANCE CO., et al., Defendants/ Third–Party Plaintiffs.**

**No. 5:00–CV–1864.**

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 14, 2001.

Stanley P. Aronson, Aronson & Associates, Akron, OH, Kenneth L. Gibson, Weick, Gibson & Lowry, Cuyahoga Falls, OH, for plaintiffs.

John V. Rasmussen, Law Office of Jan A. Saurman, Lakewood, OH, for Defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

This matter is before the Court on cross motions for summary judgment filed by Plaintiffs Margaret and Kenneth Martin (Doc. No. 59) and Defendant Midwestern Indemnity Company/Indiana Insurance Company ("Defendant" or "Midwestern," Doc. No. 62). Plaintiffs responded to Defendant's motion (Doc. No. 70), but no reply was filed. Despite the fact that no response was filed to Plaintiffs' motion, Plaintiffs filed a reply (Doc. No. 73).

## I. INTRODUCTION

On October 12, 1989, Plaintiff Margaret Martin was severely injured as a result of an accident caused by the negligence of Eblis E. Rizor ("the tortfeasor"). In addition to the injuries sustained by Mrs. Martin, Plaintiff Kenneth Martin, the spouse of Margaret Martin, alleges that he suffered a loss of consortium.

At the time of the accident, the tortfeasor was insured by Metropolitan Insurance Company under an automobile policy with liability limits of $50,000.00. Plaintiffs were also insured under a policy issued by Allstate Insurance Company with underinsured motorist ("UIM") coverage limits of $50,000.00/$100,000.00. Plaintiffs settled their claims against the tortfeasor's insurer on September 30, 1991, for the amount of $50,000.00 (i.e., the policy limit). Plaintiffs also settled their claims against their own personal UIM carrier on July 27, 1995 for the amount of $50,000.00, which was their policy limit.

At the time of his wife's accident, Plaintiff Kenneth Martin was employed by the Falls Lumber and Millwork Company ("Falls Lumber"). Falls Lumber carried business auto insurance coverage at the time of the accident, which was issued by Defendant Midwestern. Although the Business Auto Policy (the "auto policy") issued to Falls Lumber could not be located, the parties have reconstructed the policy, and they have stipulated to both the authenticity of the policy and the fact that Plaintiffs were insureds under this policy. (See Doc. No. 58 at ¶¶ 1–2). The auto policy provided liability insurance coverage in the amount of $500,000.00.

Falls Lumber was also insured under an Umbrella/Excess Policy (the "umbrella policy") issued by Midwestern. The umbrella policy provided coverage in the

amount of $1,000,000.00 in excess of the $500,000.00 underlying auto policy.

The auto policy issued by Midwestern provides for UIM coverage in the amount of $25,000.00. The umbrella policy does not include UIM coverage. Despite the limit of UIM coverage in the auto policy and no UIM coverage in the umbrella policy, Plaintiffs contend that UIM coverage arises with respect to both policies by operation of law and that the amount of coverage is equal to the amount of liability coverage provided in each of the respective policies. Midwestern, in response, raises five arguments: (1) Plaintiffs are not legally entitled to recover damages from any tortfeasors; therefore, the auto and umbrella policies do not provide UM/UIM coverage; (2) Plaintiffs settled their claims against the tortfeasor without the knowledge or consent of Defendant; (3) Plaintiffs' claims are barred due to late notice; (4) Plaintiffs failed to give timely notice of the settlements and to preserve Defendant's subrogation rights; and (5) Plaintiffs' settlement agreement released all claims thereby precluding this suit against Defendant.

## II. Legal Standard

■ This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. As a federal court located in Ohio exercising diversity jurisdiction, this Court must apply federal procedural law and Ohio substantive law. *See Hisrich v. Volvo Cars of N. America,* 226 F.3d 445, 446 (6th Cir. 2000). Accordingly, this Court must follow the Ohio Supreme Court's decisions that address the relevant issues. *See Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999). In the event that the Ohio Supreme Court has not addressed a substantive issue, this Court must ascertain Ohio substantive law from all relevant sources. *See Hisrich,* 226 F.3d at 449 n. 3.

Federal law provides the relevant legal standard with respect to summary judgment, which is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986) (citing *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984)). Further, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th

Cir.1989) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

## III. DISCUSSION

■ In a highly criticized opinion, the Ohio Supreme Court, in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 665, 710 N.E.2d 1116, 1119–20 (1999), concluded that the plaintiff, an employee of the insured corporation, was also an insured under both the employer's commercial automobile liability policy and the umbrella/excess policy issued to the employer.[1] Despite its ability to make the holding in this decision proactive only, the Ohio Supreme Court failed to do so, which has resulted in the revival of numerous cases that had been previously "closed."

This revival of cases in the wake of *Scott–Pontzer* puts an interesting twist on issues involving the application of conditions precedent to coverage, such as notice and subrogation requirements. In many of these cases, the accident giving rise to bodily injury occurred years, even decades, ago, and the cases or claims against the tortfeasor have been settled or litigated. Accordingly, the plaintiff, in the suit against the employer's insurance company, is faced with defenses to coverage based on the lack of required notice or on the plaintiff's failure to protect the insurer's subrogation rights. The case before this Court epitomizes these problems, which are exacerbated even more by virtue of the fact that the insurance policies at issue could not be located and had to be reconstructed.

The Court has immersed itself in Ohio insurance law in an attempt to resolve the complicated issues presented by this case, which, in some instances, require this Court to utilize its crystal ball and predict the Ohio Supreme Court's next move. Although the Court could, and actually considered, certifying a question to the Ohio Supreme, the Court decided to avoid a delay in the resolution of this matter. Accordingly, the remainder of this opinion addresses and resolves the issues raised by the parties. Although the Court denies Defendant's motion for summary judgment and grants Plaintiffs' motion for partial summary judgment, the Court will not issue a judgment entry at this time. Rather, the Court will proceed to trial on the issue of damages.[2]

Following a jury verdict with respect to damages, the Court will address Defendant's third-party complaint. Once all remaining matters are resolved, the Court will revisit this opinion. It is possible that, in the interim, the Ohio Supreme Court and the Ohio Appellate Courts will continue to address matters related to the issues raised in this case, which may provide additional guidance. With this in mind, the Court will address the issues raised by the parties.

## A. Whether Defendant's Policies Provide for UM/UIM Coverage.

The first issue the Court must address is whether the policies issued by Defendant to Falls Lumber provide for UM/UIM coverage—either explicitly or by op-

---

1. For an example of the criticism surrounding the *Scott–Pontzer* decision, *see Lawler v. Fireman's Fund Ins. Co.*, 163 F.Supp.2d 841 (N.D.Ohio 2001).

2. Trial is scheduled for the two-week period beginning November 26, 2001.

eration of law. The resolution of this issue has no bearing on the issue of whether Plaintiffs are entitled to such coverage, which will be addressed *infra*. However, in the event no such coverage is provided by either the auto policy or the umbrella policy, there will be no need to address any of the additional issues raised by the parties. Accordingly, the Court will begin by determining whether such coverage exists.

■ It is well settled that, under Ohio law, insurance companies must offer UM/UIM coverage with every automobile or motor vehicle liability policy delivered or issued in this state. This mandatory offering of UM/UIM coverage is encompassed in O.R.C. § 3937.18, which, at the time of Plaintiff Margaret Martin's accident, provided as follows:

> (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons: (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage ... (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile

liability or motor vehicle liability coverage....

O.R.C. § 3937.18(A) (1996).

■ The Ohio Supreme Court, in *Gyori v. Johnston Coca–Cola Bottling Group, Inc.*, 76 Ohio St.3d 565, 568, 669 N.E.2d 824, 827 (1996), held that there can be no rejection of such coverage pursuant to O.R.C. § 3937.18(C) absent a written offer of uninsured/underinsured motorist coverage from the insurance provider. Moreover, such rejection must be expressly and knowingly made, which requires that such rejection be in writing and be received by the insurance company prior to the commencement of the policy year. *See id.* at 569, 669 N.E.2d 824.

■■ Defendant Midwestern concedes that it is unable to locate any evidence of a valid offer and rejection or reduction of UM/UIM coverage with respect to either the auto policy or the umbrella policy. In the event an insurer fails to comply with O.R.C. § 3937.18, the coverage provided by this provision will arise by operation of law. *See Abate v. Pioneer Mutual Casualty Co.*, 22 Ohio St.2d 161, 258 N.E.2d 429, syll. ¶ 2, 22 Ohio St.2d 161, 258 N.E.2d 429 (1970). As a result of Midwestern's failure to comply with O.R.C. § 3937.18, UM/UIM coverage in the amount of $475,000.00 arises by operation of law with respect to the auto policy.[3]

■ The provisions of O.R.C. § 3937.18 also apply to excess insurance coverage. *See Duriak v. Globe Am. Cas. Co.*, 28 Ohio St.3d 70, 72, 502 N.E.2d 620, 622 (1986). Accordingly, UM/UIM coverage in the amount of $1,000,000.00 arises by opera-

---

**3.** The auto policy provided UIM coverage in the amount of $25,000.00; however, because there was no valid offer or rejection of UIM coverage equal to the amount of liability coverage, UIM coverage equal to the amount of liability coverage (*i.e.,* $500,000.00) arises by operation of law. In this case, the amount of

UIM coverage that arises by operation of law is the difference between the amount of liability coverage ($500,000.00) and the amount actually offered ($25,000.00). Accordingly, UIM coverage in the amount of $475,000.00 arises by operation of law, with respect to the auto policy.

tion of law with respect to the umbrella policy.

Having determined that UIM coverage exists under both the auto and umbrella policies, the Court now turns to Defendant's arguments in support of its position that Plaintiffs are not entitled to coverage benefits.

### B. Whether Plaintiffs are Legally Entitled to Recover.

Defendant Midwestern first argues that Plaintiffs are barred from recovering any UIM benefits by virtue of the language in both the auto policy and R.C. § 3937.18(A).

The auto policy's UIM endorsement and O.R.C. § 3937.18(A) provide that the insurer (Midwestern) will pay damages for bodily injury to an insured person who is "legally entitled to recover" from the owner or operator of an uninsured or underinsured motor vehicle. Defendant argues that, because Plaintiffs have settled their claim against the tortfeasor, they are not legally entitled to recover damages from the owner/operator of the motor vehicle. As a result, Defendant contends that Plaintiffs are not entitled to UIM coverage benefits under the policies at issue.

■ To Defendant's misfortune, the Ohio Supreme Court does not share Defendant's interpretation. Rather, the court stated that " 'the phrase "legally entitled to recover" means the insured must be able to prove the elements of his or her claim' against the tortfeasor." *Ohayon v. Safeco Ins. Co. of Ill.,* 91 Ohio St.3d 474, 484, 747 N.E.2d 206, 214 (2001) (quoting *Kurent v. Farmers Ins. of Columbus,* 62 Ohio St.3d 242, 245, 581 N.E.2d 533, 536 (1991)); *see also, State Farm Auto. Ins. Co. v. Webb,* 54 Ohio St.3d 61, 62, 562 N.E.2d 132, 133 (1990) (noting that the

very same phrase appears in R.C. 3937.18(A)). As in this case, the plaintiff in *Ohayon* had already settled with the tortfeasor. Accordingly, Plaintiffs' ability to prove the elements of their claim and recover damages from the tortfeasor is not at issue, and Defendant's argument is without merit.

### C. Whether any Restrictions, Exceptions, or Conditions Precedent Apply to the UM/UIM Coverage that Arises by Law.

#### 1. Notice

Midwestern argues that Plaintiffs' claims for UIM coverage under the auto policy and the umbrella policy are barred because (1) Plaintiffs provided late notice of their claims; (2) Plaintiffs failed to give timely notice of their settlement with the tortfeasor; and (3) Plaintiffs failed to preserve Midwestern's subrogation rights. Plaintiffs, however, contend that the notice and preservation requirements in the auto and umbrella policies do not apply to UIM coverage that arises by operation of law. According to Plaintiffs, conditions and exclusions are contractually based, and, as such, they are enforceable to the extent that they do not contravene public policy or the statutory laws of this State. *See State Farm Auto. Ins. Co. v. Alexander,* 62 Ohio St.3d 397, 401, 583 N.E.2d 309 (1992).

Plaintiffs rely on *Scott–Pontzer* for the proposition that the conditions and exclusions within the auto policy and the umbrella policy do not apply to the UIM coverage that arises by operation of law. In *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.,* 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), the Supreme Court of Ohio examined whether a provision in the excess insurance policy requiring the insured to be acting during the scope of his employment applied to UIM coverage, which arose by operation of law, under the excess policy.[4] The excess policy provided no

---

**4.** The primary policy provided UIM coverage, and the provisions of the primary policy contained no scope of employment requirement.

UIM coverage. Thus, the court concluded that "any language in the ... umbrella policy restricting insurance coverage was intended to apply solely to excess *liability* coverage and not for purposes of underinsured motorist coverage." *Scott–Pontzer,* 85 Ohio St.3d at 666, 710 N.E.2d 1116. Accordingly, there was no requirement in the umbrella policy that the insured had to be acting during the scope of his employment to qualify for UIM coverage.

The auto policy issued by Defendant Midwestern provided UM/UIM coverage in the amount of $25,000.00 and included Form # MWCA, which discussed the UM/UIM insurance. This form included a section titled "Notice of Accident," which provided:

> In the event of an *accident,* notify *us* promptly as to the time, place and circumstances of the *accident,* including the names and addresses of injured persons and witnesses.
>
> A person claiming any coverage under this endorsement must:
>
> 1. Cooperate with *us* and help *us* in any matter concerning a claim or suit. No obligations shall be assumed, expenses incurred or voluntary payments made by an *Insured person* except at that person's own costs.
> 2. Send *us* promptly any legal papers received relating to any claim or suit. . . .

(Doc. No. 63 at ex. B). Plaintiffs argue that the notice language in Form # MWCA does not create a mandatory condition precedent to coverage; rather, the only mandatory language with respect to coverage consists of the numbered items included under the text "A person claiming any coverage under this endorsement must. . . ." Alternatively, Plaintiffs contend that the provision quoted above creates an ambiguity as to whether notice is a condition precedent, which must then be interpreted strictly against the insurer. *See Weiker v. Motorists Mut. Ins. Co.,* 82 Ohio St.3d 182, 185, 694 N.E.2d 966, 968 (1998) (quoting *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383 (1988)) ("[W]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.").

The Court has reviewed the notice language in both the auto policy and UIM endorsement, and the Court concludes that the UIM endorsement is unclear as to whether notice is a prerequisite to coverage. The ambiguousness of the notice provision is best exemplified by comparing the relevant language in the UIM endorsement to that of the auto policy. First, the notice language in the UIM endorsement appears under the heading "**WHAT TO DO IN CASE OF AN ACCIDENT,**" which is in stark contrast to the heading in the auto policy under which the notice language is included, which reads "**PART VI—CONDITIONS.**" In addition, the auto policy provides, "**You** *must* promptly notify **us** or **our** agent of any **accident** or **loss. You** *must* tell **us** how, when and where the **accident** or **loss** happened. **You** *must* assist in obtaining the names and addresses of any injured persons and witnesses." (Doc. No. 63, at ex. B) (italicized emphasis added). In comparison, the notice provision in the UIM endorsement provides, "In the event of an **accident,** notify **us** promptly as to the time, place and circumstances of the **accident,** including the names and addresses of injured persons and witnesses." (*Id.*). In addition, this provision is offset in a separate paragraph from requirements a person claiming any coverage under the endorsement *must* do.

Although Midwestern knew how to phrase the notice provision as a condition

precedent (*e.g.*, as in the auto policy), it did not do so with respect to the UIM endorsement. The notice provision as worded in the endorsement is susceptible to alternative interpretations, as both Midwestern's and Plaintiffs' interpretation of this language are reasonable. Accordingly, this language is ambiguous and, in interpreting the language strictly against the insurer and liberally in favor of the insured, the Court concludes that the UIM endorsement contains no notice condition precedent to coverage.[5]

## 2. Subrogation

Midwestern also contends that Plaintiffs are not entitled to coverage because they failed to protect Midwestern's subrogation rights by settling with the tortfeasor and releasing the tortfeasor from all claims related to the accident.

■■ The Ohio Supreme Court has long recognized an insurer's right of subrogation. *See, e.g., Newcomb v. Cincinnati Ins. Co.,* 22 Ohio St. 382 (1872). The court has also held that a subrogation clause is a valid and enforceable precondition to the duty to provide underinsured motorist coverage. *See McDonald v. Republic–Franklin Ins. Co.,* 45 Ohio St.3d 27, 29, 543 N.E.2d 456, 459 (1989) (quoting *Bogan v. Progressive Cas. Ins. Co.,* 36 Ohio St.3d 22, 31, 521 N.E.2d 447, 456 (1988)).

■■ While this Court does not disagree with the case law of the Ohio Supreme Court, the Court is of the opinion that the facts underlying the case at issue make application of the existing case law to this case unjust. While it is true that Plaintiffs settled with the tortfeasor and released her from all liability, the Plaintiffs

did so approximately seven years and nine months before the Ohio Supreme Court decided *Scott–Pontzer,* which gives rise to this case. Before the holding in *Scott–Pontzer* was issued in June of 1999, Plaintiffs, and other similarly situated, could not predict that they would be covered under their employers' insurance policy, even when outside the scope of employment, and that such coverage could include underinsured motorists coverage. Accordingly, the Court is not prepared to rely upon the destruction of Midwestern's subrogation rights to bar Plaintiffs from recovering.[6]

## D. Whether Plaintiffs' Prior Release of all Claims Precludes this Suit.

At the time Plaintiffs settled their claim against the tortfeasor, Plaintiffs executed a release of all of their claims. The release, which is signed by both Kenneth and Margaret F. Martin, provides, in relevant part, as follows:

> For and in Consideration of the payment to me/us of the sum of FIFTY THOUSAND DOLLARS AND 00/1000 and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge Hershel D. Rizor and Eblis E. Rizor and any and all other persons, firms and corporations of and from any and all actions, causes of action, claims or demands for damages, costs, loss of use, loss of services, expenses, compensation, consequential damage or any other thing whatsoever on account of, or in any way

5. Given that the notice language in the UIM endorsement does not create a condition precedent, the Court need not analyze whether this language applies to the UIM coverage that arises by operation of law.

6. Furthermore, the Court is of the opinion that Midwestern has not been prejudiced by the release of the tortfeasor, who was deemed uncollectible by Plaintiffs' UIM provider. In addition, Plaintiffs settled in exchange for the limit of the tortfeasor's policy.

growing out of, any and all known and unknown personal injuries and death and property damage resulting or to result from an occurrence or accident that happened on or about the 12th day of October, 1989, at or near Township of Springfield, Summit County, Ohio.

(Doc. No. 63, at ex. D). Defendant argues that the language whereby Plaintiffs release "Hershel D. Rizor and Eblis E. Rizor *and any and all other persons, firms and corporations*" also releases Plaintiffs' claims against Defendant. This argument lacks merit.

 The release operates as a contract between Plaintiffs and Mr. and Mrs. Rizor. Defendant Midwestern was not a party to the contract and cannot claim to be a third-party beneficiary, as Midwestern was never contemplated or sufficiently identified as a party. Moreover, contracts granting immunity or limiting liability are strictly construed and limited to intended beneficiaries. *See Robert C. Herd & Co., Inc. v. Krawill Machinery Corp.,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). Accordingly, this argument is rejected.

### E. Whether Benefits are Paid on a Pro Rata Basis.

Defendant's final argument addresses the payment of benefits. In the event the Court concludes that Midwestern is liable, Midwestern argues that it is entitled to a declaration that its UIM coverage would only apply on a pro rata basis with any other UIM insurance available.

Although Defendant has filed a third-party complaint against other potential insurers, there is no evidence, at this stage, that any other insurance is available. Accordingly, the Court will delay its resolution of this issue until the issue of damages is resolved. In the interim, Defendant Midwestern and the third-party plaintiffs may continue with discovery as it relates to Defendant's third-party claims.

### IV. CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is DENIED and Plaintiffs' motion for partial summary judgment is GRANTED. As the Court previously noted, no judgment entry will be entered at this time. Rather, the Court will revisit its analysis of the issues raised by the parties once damages are determined and Defendant's third-party complaint is resolved.

In view of the nature of this dispute, the Court requests Plaintiffs and Defendant to stipulate to, and submit to the Court, jury instructions for use at trial by November 19, 2001. In the event the parties cannot agree to the jury instructions, they should file their proposed jury instructions with the Court by November 19, 2001.

This case remains on the standby trial list beginning Monday, November 26, 2001.

IT IS SO ORDERED.