JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal, plaintiffs-appellants Jeanetta Workman, et al. challenge the Cuyahoga County Common Pleas Court's decision that rendered summary judgment in favor of the defendants-appellees and that denied plaintiffs' coverage under the various insurance policies. Defendant-appellee National Union Fire Insurance Company ("National") cross-appeals from the trial court's decision asserting that a genuine issue of material fact exists as to plaintiff Jeanetta Workman's status as an employee of Carlisle Engineered Products, Inc. ("Carlisle"), the named insured in its policy. For the reasons that follow, we affirm in part; reverse in part and remand for further proceedings.
 {¶ 2} It is not in dispute that Jeanetta Workman sustained injuries as a result of an automobile accident caused by an underinsured motorist on October 13, 1997. Ms. Workman was driving her own vehicle for personal, non-business related purposes at the time of the collision. Plaintiffs pursued litigation against the underinsured motorist tortfeasor in 1999. Plaintiffs settled their claims in that litigation with the tortfeasor and his insurer without giving notice to, or obtaining the consent of, any of the defendant-appellee insurers.
 {¶ 3} In October 2000, plaintiffs commenced this action against several insurance companies seeking coverage pursuant to the authority ofScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. For purposes of this appeal, plaintiffs claim coverage under the following policies: (1) a commercial general liability policy and an umbrella policy issued by defendant-appellee the Cincinnati Insurance Company ("Cincinnati") to the placement agency[1] that employed Ms. Workman; (2) Business Auto Policy issued by National to Carlisle, one of Ms. Workman's alleged employers at the time of the accident; and (3) Business Auto Policy issued by Travelers Insurance ("Travelers") to Mr. Workman's employer, Unicco.
 {¶ 4} All parties moved for summary judgment before the trial court. The trial court granted the motions for summary judgment filed by Cincinnati, National and Travelers. The court denied plaintiffs' corresponding cross-motions for summary judgment against those parties.[2] Plaintiffs appeal assigning the following assignment of error for our review:
 {¶ 5} "I. The trial court erred, as a matter of law, by granting summary judgment against plaintiff-appellee."
 {¶ 6} We employ a de novo review in determining whether summary judgment was warranted. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 1996-Ohio-336; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585.
 {¶ 7} Summary judgment is appropriate where: "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274." Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369-70,1998-Ohio-389.
 {¶ 8} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385.
 {¶ 9} Plaintiffs assert various issues challenging the lower court's award of summary judgment to each of respective insurers. For purposes of clarity, we address the issues relating to each policy separately.
A. Cincinnati policies
 {¶ 10} We first address plaintiffs' contention that Cincinnati's CGL and umbrella policies are motor vehicle policies since they provide coverage for the operation and use of "Hired" and "Non-owned" vehicles.
 {¶ 11} The trial court found that Cincinnati's CGL policy was not a motor vehicle policy subject to the requirements of R.C. 3937.18. The court relied upon the authority of Davidson v. Motorists Mut. Ins. Co.
(2001), 91 Ohio St.3d 262, 264; and Lawler v. Fireman's Fund Ins. Co.
(N.D.Ohio. 2001), No. 101CV503. On appeal and below, plaintiffs rely onSelander v. Erie Ins. Co. (1999), 85 Ohio St.3d 541, 544-45, and contend that because the CGL policy provides coverage for "Hired" and "Non-owned" vehicles, it qualifies as a motor vehicle policy and required an offering of UIM coverage pursuant to R.C. 3937.18. We agree.
 {¶ 12} Cincinnati's CGL policy contained a Hired Auto and Non-Owned Auto Liability endorsement that provides in pertinent part:
 {¶ 13} "A. Hired Auto Liability
 {¶ 14} "The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.
 {¶ 15} "B. Non-Owned Auto Liability
 {¶ 16} "The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you."
 {¶ 17} In the policy "`Hired auto' means any `auto' you lease, hire, or borrow. This does not include any `auto' you lease, hire, or borrow from any of your `employees' or members of their households, or from any partner or `executive officer' of yours." And, "`Non-owned auto' means any `auto' you do not own, lease, hire, or borrow which is used in connection with your business."
 {¶ 18} Like the policy in Selander, the Cincinnati policy involves a general liability policy that specifically provides liability coverage for injuries arising out of the use of motor vehicles. See Davidson v.Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, 267. Just as inSelander, the Cincinnati policy provides limited automobile liability coverage through a hired and non-owned vehicle endorsement.
 {¶ 19} In Selander, the court found that "where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided." Selander,85 Ohio St.3d at 544; accord Davidson, 91 Ohio St.3d at 267, "`the fact that a policy provides liability coverage for non-owned and hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18 that a motor vehicle liability policy be delivered in this state with respect to any motor vehicle registered or principally garaged in this state,'" quotingSelander, 85 Ohio St.3d at 544-45.
 {¶ 20} We find the reasoning set forth by the federal court inLawler v. Fireman's Fund Ins. Co. (N.D.Ohio. 2001), No. 101CV503, relied upon by Cincinnati, and cited by the trial court, unpersuasive in distinguishing this case from the application of Selander. In Lawler, the court determined that a liability policy containing a non-owned vehicle endorsement did not qualify as a motor vehicle policy. In reaching this conclusion, the court attempted to distinguish Selander on the basis that the Lawler plaintiffs' injuries arose from an auto accident involving a personal vehicle being operated for personal use while the Selander plaintiffs' injuries arose from an auto accident that occurred in the scope of employment. Id. Thus, the court concluded that because plaintiff Lawler was injured outside the scope of employment, the policy did not qualify as a motor vehicle policy. Id.
 {¶ 21} The reasoning in Lawler is flawed because it confuses the limitations of coverage with the classification of the policy as motor vehicle policy. As we read Selander and Davidson, a policy either qualifies as an automobile policy or it does not based upon the express policy terms. If a policy qualifies as such, the provisions of R.C. 3937.18
require an offering of UIM coverage.[3] Yet, if we accept the reasoning employed by the court in Lawler, a policy could be both a motor vehicle policy and not depending on what circumstances give rise to the claim for coverage, that is whether the claimant suffered injury in the course and scope of employment.[4] For that reason, we decline to follow Lawler.
 {¶ 22} Based on the foregoing, we find that Selander controls the disposition of this issue and conclude that the Cincinnati CGL policy qualifies as a motor vehicle liability policy subject to the provisions of R.C. 3938.18.[5] Accordingly, the version of R.C. 3937.18 that is applicable to this case required Cincinnati to offer UIM coverage. It is undisputed that Cincinnati did not offer UIM coverage, therefore, it is implied as a matter of law. Selander, 85 Ohio St.3d at 546.
 {¶ 23} Because Cincinnati's Umbrella policy provides coverage "in excess of the `underlying insurance,'" it also qualifies as a motor vehicle liability policy.[6] As established, the underlying Cincinnati policy does provide coverage for hired and non-owned autos. Cincinnati did not offer UIM coverage in connection with the Umbrella policy, therefore, it is implied as a matter of law. Selander,85 Ohio St.3d at 546.
 {¶ 24} We next address the issue of whether plaintiffs are insureds under the policies pursuant to the holding of Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660.
 {¶ 25} In Scott-Pontzer, a widow claimed UIM coverage under her deceased husband's employer's commercial automobile insurance policy and its excess/umbrella policy. Scott-Pontzer, 85 Ohio St.3d at 660. The underlying policy in Scott-Pontzer defined the insured for purposes of UIM coverage as:
 {¶ 26} "`B. Who Is An Insured
 {¶ 27} "`1. You.
 {¶ 28} "`2. If you are an individual, any family member.
 {¶ 29} "`3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss of destruction.
 {¶ 30} "`4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.'" Id. at 663.
 {¶ 31} The Cincinnati CGL policy does not contain a UIM endorsement but defines the insured for purposes of the Hired Auto and Non-owned Auto Liability endorsement similar to the provisions examined in Scott-Pontzer and particularly as follows:
 {¶ 32} "C. Section II — Who is Insured * * *
 {¶ 33} "a. You; * * *."
 {¶ 34} The excess/umbrella policy in Scott-Pontzer, like both Cincinnati's CGL and umbrella policies here, made no provision for UIM coverage. Id. at 665. However, the excess/umbrella policy inScott-Pontzer did restrict its coverage to employees acting within the scope of their employment as do provisions in Cincinnati's CGL and umbrella policies in this case. Id. at 666.[7]
 {¶ 35} In Scott-Pontzer, the Ohio Supreme Court found ambiguity in the underlying policy language that defined the insured as "you" referring to the named insured. Id. at 664. The underlying policy examined in Scott-Pontzer only identified a corporate entity as the named insured on its declaration page. The term "you" as used throughout the policy referred to the named insured, that is the corporation. The court reasoned that UIM insurance coverage must be interpreted with regard to persons. Id. It, therefore, concluded that "`you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id.
 {¶ 36} In examining the excess/umbrella policy for UIM coverage inScott-Pontzer, the Ohio Supreme Court further determined that such coverage existed by operation of law. Id. at 665. This conclusion was driven by the fact that the excess/umbrella insurance policy failed to offer such coverage in contravention to the statutory requirements of R.C. 3937.18. Id., following Gyori v. Johnston Coca-Cola Bottling Group
(1996), 76 Ohio St.3d 565.
 {¶ 37} Having found coverage under both polices in Scott-Pontzer, the Ohio Supreme Court proceeded to examine whether any exclusion or restriction applied to bar UIM coverage. Id. at 666. The court applied the principle articulated in King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208 that "`where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.'" Scott-Pontzer,85 Ohio St.3d at 665-666. In doing so, the court found that the underlying policy failed to restrict coverage to employees acting in the course and scope of employment which resulted in UIM coverage to Scott-Pontzer. While the excess/umbrella policy did, in fact, restrict coverage to employees acting in the scope of employment, the court refused to insert the restriction into UIM coverage it had implied by operation of law. Id. at 666. The court distinguished the application of this restriction to liability insurance of an excess/umbrella policy and UIM insurance of such policies. Id. (Emphasis in original).
 {¶ 38} After careful review of Cincinnati's policies, we find that plaintiffs are not insureds under the policies. Plaintiffs claim coverage on the basis that the term "you," as used in the Cincinnati policies, suffers from the same ambiguity perceived by the Ohio Supreme Court inScott-Pontzer and compels inclusion of corporate employees as insureds. However, unlike the policies examined in Scott-Pontzer, both the Common Policy Declarations of Cincinnati's CGL policy and the policy declarations (along with the named insured endorsement) of Cincinnati's umbrella policy identify an individual in addition to corporate entities as a named insured, that is, "George Fonseca." As a result, when the term "you" is used throughout the Cincinnati policies, it does, in fact, reference an actual person as opposed to only a corporate entity as was the case in Scott-Pontzer. The rationale behind the decision inScott-Pontzer, as set forth previously, does not exist here since the term "you" "extends to some person or persons" and is not limited to the corporate entity.[8] In this case, "you" is not ambiguous for purposes of UIM coverage. Accordingly, plaintiffs are not insured under the terms of these policies.
 {¶ 39} Because plaintiffs are not insured under the policies, the trial court did not err in granting summary judgment in favor of Cincinnati.
B. National policy
 {¶ 40} With regard to the National policy, the trial court found that UIM arose by operation of law, that Ms. Workman was an employee of Carlisle (the insured) at the time of the accident, but that plaintiffs breach of the notice and subrogation conditions of the business auto policy barred coverage. For the reasons that follow, we find genuine issues of material fact exist concerning Ms. Workman's status as an employee of Carlisle at the time of the accident as well as the terms of UIM coverage provided by the policy.
 {¶ 41} The record on appeal indicates that the parties dispute the terms of UIM coverage provided by the policy. In particular, plaintiffs contend that UIM coverage was neither offered by National nor rejected by Carlisle and therefore assert that UIM coverage arises by operation of law. National contends that the policy has a UIM endorsement with specific terms. In fact, the record contains evidence to that effect. (R. 100). The record also contains evidence and averments that would suggest that UIM coverage was not included in the policy. (See, generally, R. 102 and exhibits thereto). The trial court's summary judgment determination did not address this factual discrepancy but simply stated that "UM coverage is imposed as a matter of law. R.C. 3937.18." There was no explanation as to why the court ignored the Ohio Uninsured Motorists Coverage — Bodily Injury endorsement submitted by National upon its cross-motion for summary judgment. It is impossible to resolve the issue of coverage without a factual determination as to the explicit terms of the policy, and the terms of UIM coverage in particular. This is underscored by the fact that the alleged UIM endorsement contains specific terms that may vary or supercede more general or conflicting terms contained in the policy itself. E.g., Monsler v. Cincinnati Cas.Co. (1991), 74 Ohio St.3d 321, 330 (specific provisions control over general provisions). Thus, the determination of the policy terms could very well effect the determination of who is an insured as well as the application of notice and subrogation provisions.[9] Accordingly, we reverse the decision of the trial court that awarded summary judgment to National.
 {¶ 42} In its cross-motion National contends that a genuine issue of material fact exists as to Ms. Workman's status as an employee of Carlisle at the time of the accident. After carefully reviewing the record, we agree. Based upon the evidence, including Ms. Workman's deposition testimony, reasonable minds could conclude that Ms. Workman was not an employee of Carlisle at the time of the accident.[10]
Construing the evidence in a light most favorable to National, we cannot say that Ms. Workman was an employee of Carlisle at the time of the accident as a matter of law. Accordingly, National's cross-appeal on this issue is sustained.
 {¶ 43} Travelers' policy
 {¶ 44} Travelers issued a Commercial Automobile Liability policy to plaintiff Larry Workman's employer, Unicco Service Company. The policy did not provide UIM coverage and therefore this coverage arises by operation of law. Traveler's asserts that the trial court erred in finding that Larry Workman is an insured under the policy.
 {¶ 45} The policy identifies the named insured solely in reference to a corporate entity, Unicco Service Comany ("Unicco"). As inScott-Pontzer, the term "you," as used throughout the policy, refers to the named insured shown on the declaration page, which is Unicco. The policy defines "insureds" in relevant part as:
 {¶ 46} "a. You for any covered `auto.'
 {¶ 47} "b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
 {¶ 48} "* * *
 {¶ 49} "(2) Your employee if the covered `auto' is owned by that employee or a member of his or her household."
 {¶ 50} This policy contains similar language to that the Ohio Supreme court found to afford UIM coverage to employees of the corporate entity in Scott-Pontzer. In fact, Traveler's bases its argument that Larry Workman does not qualify as an insured on its opinion that the Ohio Supreme Court wrongly decided Scott-Pontzer. Since Scott-Pontzer controls we find that the trial court correctly determined that Larry Workman is an insured. Scott-Pontzer, supra.; Moore v. State Auto Ins. Co. (2000),88 Ohio St.3d 27, syllabus.[11]
 {¶ 51} Travelers claims that because plaintiffs settled and released the tortfeasor, they are not legally entitled to recover damages from the tortfeasor. In support, Travelers relies on the established principle that UIM coverage is dependent on the tortfeasor's legal liability to the injured persons. The Ohio Supreme Court directs that "the phrase `legally entitled to recover' means that the insured must be able to prove the elements of his or her claim' against the tortfeasor."Ohayon v. Safeco Ins. Co. of Ill. (2001), 91 Ohio St.3d 474, 484, quotingKurent v. Farmers Ins. of Columbus (1991), 62 Ohio St.3d 242, 245. Courts barring UIM recovery on this ground typically do so for reasons including sovereign immunity or application of out of state law. Travelers has not cited any case law that holds that settling and releasing a tortfeasor bars recovery on this ground. We have, however, found authority that rejects this position. Martin v. Liberty Mutual Ins. Co. (2001),187 F. Supp.2d 896, 902.
 {¶ 52} We agree with the reasoning in Martin which provides that because plaintiffs settled with the tortfeasors, their ability to prove the elements of their claim and recover damages from the tortfeasor is not in issue. Martin v. Liberty Mutual Ins. Co. (2001), 187 F. Supp.2d 896,902. Accordingly, we find this argument to be without merit.
 {¶ 53} Lastly, we address the effect of notice and subrogation provisions on the plaintiffs' ability to recover UIM insurance from Travelers. The trial court found that notice and subrogation conditions of liability coverage cross-applied to UIM coverage imposed as a matter of law. The trial court found that because plaintiffs failed to "provide timely notice of the accident" to Travelers, they destroyed Travelers' subrogation rights which precluded their ability to make a claim for UIM coverage under the policy. The trial court relied on the reasoning of the Second Appellate District in Lukenbill v. Midwestern Indemnity Co.
(2001), 143 Ohio App.3d 501.
 {¶ 54} Plaintiffs argue that because UIM coverage arises by operation of law, it cannot include any language that exists in the actual policy. Plaintiffs refer to this as the "Pontzer 666 Rule" as a short-hand reference to the following reasoning from that case:
 {¶ 55} "[W]e have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage." Scott-Pontzer, 85 Ohio St.3d at 666.
 {¶ 56} Plaintiffs also refer us to Demetry v. Kim (1991),72 Ohio App.3d 692, 689 in support of the proposition that "there is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured motorist coverage from being broader than liability coverage." In Demetry, the court refused to cross-apply a liability exclusion to UIM coverage implied by law. The court reasoned that "there could be no negotiated exclusions intended to be implied to the underinsured coverage [that is imposed by operation of law]." Id.
 {¶ 57} Travelers asserts that a claimant's failure to comply with policy conditions precludes UIM coverage even when UIM is impressed upon the policy by law. To that end, Travelers contends there is a distinction between policy exclusions and policy conditions. Travelers relies uponDuriak v. Globe Am. Cas. Co. (1986), 28 Ohio St.3d 70, 71-72, overruled by Miller v. Progressive Cas. Ins. Co. (1994), 69 Ohio St.3d 619 (policy condition decreasing the statute of limitations established by law was against public policy and therefore unenforceable).
 {¶ 58} It is well-settled that insurers may include notice and subrogation clauses as valid provisions in UIM policies. Ferrando,
___ Ohio St.3d ___, 2002 Ohio 7217 at ¶ 83.[12] Consequently, and for the reasons that follow, we find that common policy conditions that were meant to be applied to any and all coverages provided in the policy would apply to a coverage engrafted upon the policy by operation of law. See, generally, Heiney v. The Hartford, Franklin App. No. 01AP-1100, 2002 Ohio 3718, following Duriak v. Globe American Cas. Co. (1986), 28 Ohio St.3d 70, overruled on other grounds by Miller v. Progressive Cas. Ins. Co.
(1994), 69 Ohio St.3d 619. This would include any valid and enforceable notice or subrogation provisions that apply to any and all coverages of a policy.
 {¶ 59} While the trial court and Travelers rely upon the outcome in Lunkenbill, we decline to apply it here to the extent that it involved differing policy terms and/or that the court employed different reasoning. In Lukenbill, the Second Appellate District addressed the issue of cross-applying terms found in a liability policy of insurance to UIM coverage that arose by implication of law. The policy contained a notice provision as a "general condition." The court reasoned that a "general condition [is] imposed upon the policy with respect to anyliability coverage it provides." Id. at 506-507 (emphasis added).
 {¶ 60} A careful review of the Travelers' policy reveals that the notice and subrogation provisions relied upon by Travelers' are neither "common policy conditions" nor "general conditions" as set forth in the policy. The Travelers' policy contains certain "Common Policy Conditions." These conditions purport to apply to "[a]ll Coverage Parts included in [the] policy." However, there are no notice or subrogation provisions contained in that section.
 {¶ 61} Rather than relying upon any common policy condition, Travelers relies upon conditions contained only within the "business auto conditions" which specifically apply "in addition to the common policy conditions" under that particular coverage part. While the Travelers' policy also contains "general conditions" under Section IV, the Business Auto Conditions, those "general conditions" do not include notice or subrogation provisions.
 {¶ 62} We further note that Travelers included specific notice and subrogation clauses in policy endorsements that provide UIM coverage under the policy in certain states. However, Travelers did not provide Ohio UIM coverage as a matter of contract in this policy. As established, the UIM coverage here arises as a matter of law.
 {¶ 63} Because Travelers did not include notice or subrogation as a common policy condition nor as general conditions, the notice and subrogation provisions in the Travelers' policy are apparently different than those examined in Lukenbill which were referred to as "general conditions." Ibid. Therefore, Travelers' reliance on conditions that arise under, and apply to, a specific coverage part, as opposed to a condition that applies to the policy as a whole, is misplaced. Our reasoning is further supported by the fact that Travelers negotiated specific notice and subrogation conditions with reference to the UIM endorsements that do exist in the policy but that are not applicable to this case.
 {¶ 64} Since there are no valid or enforceable notice or subrogation clauses that could be cross-applied from the policy as common and/or general policy conditions to UIM coverage arising by operation of law, the trial court should not have premised summary judgment in Travelers' favor on this ground.
 {¶ 65} Our reasoning adheres to the principle that subrogation clauses are "reasonably includable in contracts providing underinsured motorist insurance". Bogan, 36 Ohio St.3d at 29, overruled on other grounds in Ferrando, supra. However, we find that in order to justify cross-applying such provisions to insurance arising by operation of law, the terms must clearly establish an intent to apply such provisions to any and all coverages afforded under the policy. In the policy under our examination, Travelers chose not to include notice and/or subrogation provisions in their common policy conditions and/or the other "general conditions" of the liability policy. As a result, the notice and subrogation provisions located under a specific section of a particular coverage part, as opposed to being applicable to the policy as a whole, do not cross-apply to UIM coverage arising by operation of law.
 {¶ 66} Accordingly, the trial court should not have awarded summary judgment to Travelers on Larry Workman's claim for UIM coverage with regard to the issue of notice and subrogation.
 {¶ 67} Based on the foregoing, plaintiffs' assignment of error is sustained in part and overruled in part. National's cross-appeal is sustained on the issue of Ms. Workman's status as an employee.
 {¶ 68} The trial court's judgment awarding summary judgment in favor of Cincinnati is affirmed; the trial court's award of summary judgment to National is reversed as genuine issues of material fact remain concerning coverage under National's policy and Ms. Workman's status as an employee of Carlisle. The trial court's judgment awarding summary judgment in favor of Travelers on Larry Workman's claim for coverage is reversed. This matter is remanded for further proceedings consistent with this opinion.
KENNETH A. ROCCO, P.J., CONCURS.
TERRENCE O'DONNELL, J., CONCURS WITH SEPARATE CONCURRING OPINION. (See separate concurring opinion attached).
[1] Fonseca Resources/Placement DBA Snelling Snelling, SPS Management, Inc. ("Snelling").
[2] The trial court also granted Allstate Insurance Company's motion for summary judgment.
[3] The issue of whether the particular terms of the policy provide coverage to person(s) claiming coverage thereunder is a different issue. This would include determining whether coverage depends on the injury occurring within the course and scope of employment.
[4] For example, a policy would qualify as a motor vehicle policy requiring an offering of UIM if the insured was injured in the course and scope of employment but the same policy would not be a motor vehicle policy if the insured was injured outside the scope of employment. Thus, there could be no way to reconcile this logic with the insurer's obligation to offer UIM coverage under former R.C. 3937.18 at the inception of the policy.
[5] Cincinnati further relies upon DeUzhca v. Derham (April 5, 2002), Montgomery App. No. 15106 and Ribeiro v. Indian Harbor Ins. Co. (May 6, 2002), Cuyahoga County Common Pleas Case No. CV 441897. DeUzhca andRibeiro did not involve a hired and non-owned vehicle endorsement and as a result are distinguishable from this case.
[6] {¶ a} The Umbrella policy also provides the following:
{¶ b} "This policy does not apply to the following:
{¶ c} "* * *
{¶ d} "12. Non-owned Auto Limitation
{¶ e} "Any liability of the owner or anyone else, except `executive officers' and owners of insured organizations, arising out of the ownership, maintenance or use of any `auto' which you do not own, unless such coverage is provided by a valid and collectible policy listed in the Schedule of Underlying Policies, and then only for such hazards for which coverage is provided by such `underlying insurance.'"
[7] Section II.c. of Cincinnati's CGL policy provides: "c. With respect to a `non-owned auto' any partner, or executive officer of yours, but only while such `non-owned auto' is being used in your business." Cincinnati's umbrella policy provides coverage in "excess of the `underlying insurance' * * *."
[8] Identifying individuals as named insured and thereby including persons within the definition of "you" is different than adding specific individuals to the definition of "Who Is an Insured" through an endorsement to a specific coverage part of a policy. This Court has addressed the latter and determined that such an endorsement does not remove the ambiguity inherent in the term "you" that continues to be defined only in reference to a corporate entity. See Addie v. Linville, 2002 Ohio 5333, Cuyahoga App. Nos. 80547, 80916.
[9] The Ohio Supreme Court in its recent pronouncement in Ferrando v.Auto-Owners Mutual Ins. Co., ___ Ohio St.3d ___, 2002 Ohio 7217 at ¶ 93, declined to "establish a rule * * * that a delay in notice of a particular length of time is unreasonable in all cases." Ferrando involved a three and one-half year delay from the time of the accident until the claimant provided the insurer with notice. In that case, the court examined notice, subrogation and consent to settle provisions and found genuine issues of material fact existed as to whether the claimant provided reasonable notice and whether the insurer suffered prejudice. In reaching its conclusion, the court employed a two-step approach in assessing late-notice and breach of consent-to-settle allegations. Following Ferrando, the reasonableness of notice in this case presents an issue of fact and even if prejudiced is presumed, Ferrando directs that the insured may rebut this presumption by creating a genuine issue of fact in that respect as well.
[10] Ms. Workman's testimony indicates that she was awaiting for a call to return to work at Carlisle at the time of the accident. (R. 100, Exhibit 1, p. 95). She acknowledges that she was told not to come back to work because she was a "no show, no call." Id. While there is evidence suggesting that she would be recalled to work, she admits she had not been at the time of the accident. Id.
[11] Holding that an insured need not suffer bodily injury, sickness, or disease in order to recover damages from the insurer for uninsured/underinsured motorist coverage.
[12] Therein, the Ohio Supreme Court joined the majority of states in holding "that when an insurer's denial of UIM coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subgration rights." Id. The court then overruled, in part, paragraph four of the syllabus of Bogan v. Progressive Cas. Ins. Co.
(1988), 36 Ohio St.3d 22 which held "that a consent-to-settle provision is an absolute precondition to recovery that is materially breached whenever it is not complied with."; also disapproving of any reasoning inBogan, Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159 andMcDonald v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27 that is consistent with its holding in Ferrando.