JOURNAL ENTRY and OPINION
{¶ 1} This is the third appeal involving plaintiff-appellant Carol Oakar's 1990 automobile accident injury case. In the first appeal, OakarI,[1] we held the failure of an insured to notify the uninsured motorist/underinsured motorist (UM/UIM) carrier of a settlement with the tortfeasor does not operate to eliminate coverage where the UM/UIM claim was not legally recognized at the time of the settlement with the tortfeasor. The second Oakar case, Oakar II,[2] resolved a dispute over the Oakars' claim for prejudgment interest.
 {¶ 2} This appeal involves plaintiffs-appellants Carol and Bernard Oakars' claim against defendant-appellee St. Paul Fire and Marine Insurance Company (St. Paul), the insurer of Carol Oakar's employer Meridia Hillcrest Hospital's (Meridia). The Oakars claim coverage exists under both the one million dollar liability policy and the twenty million dollar excess/umbrella policy issued by St. Paul to Meridia.
 {¶ 3} At trial, the Oakars moved for partial summary judgment claiming coverage under both policies. St. Paul moved for summary judgment claiming no coverage existed and the Oakars failed to meet various preconditions to coverage. From the trial court's grant of summary judgment in favor of St. Paul, the Oakars appeal and assign the following errors for our review:
 {¶ 4} "The trial court erred in granting defendant's cross-motionfor summary judgment, in denying plaintiffs' motion for partial summaryjudgment and in ruling that plaintiffs were not entitled to underinsuredmotorist coverage under either of defendant's insurance policies.
 {¶ 5} "A. The trial court erred in enforcing insurance policyprovisions to which plaintiffs never agreed and about which plaintiffsnever knew.
 {¶ 6} "B. The trial court erred in either determining that thelanguage of defendant's insurance policies was not ambiguous or inconstruing ambiguous language against plaintiffs and in favor ofdefendant.
 {¶ 7} "C. The trial court erred when it failed to find that thephrase `legally entitled to collect from the owner or driver of anuninsured vehicle,' as used in defendant's insurance policy, isinherently ambiguous.
 {¶ 8} "D. The trial court erred in enforcing an insurance policyrestriction that was not allowed by the mandatory coverage required underR.C. § 3937.18(A)(2).
 {¶ 9} "E. The trial court erred in inserting into defendant'sinsurance policies a `statute of limitations' provision that did notexist in defendant's insurance policies and in holding that plaintiffshad to bring any underinsured motorist claim within either two years orfour years of the accident date.
 {¶ 10} "F. The trial court erred in inserting into defendant'sinsurance policies a `subrogation' provision that did not exist indefendant's insurance policies.
 {¶ 11} "G. The trial court erred in holding that plaintiffs failedto give timely notice to defendant of plaintiffs' potential claims forunderinsurance motorist coverage.
 {¶ 12} "H. The trial court erred in holding that plaintiffs'delayed notice deprived defendant of any opportunity to investigate themerits of plaintiffs' case, or to make an intelligent evaluation as toliability, damages and coverage, because there was absolutely no evidencebefore the trial court on that issue, nor was there any evidence thatdefendant suffered any prejudice as a result of the delay in notice."
 {¶ 13} Having reviewed the record and pertinent law, we reverse and remand this matter to the trial court for proceedings consistent herewith. We further note the impact of Ferrando v. Auto-Owners Mut.Ins. Co.[3] on this case. On December 27, 2002, the Ohio Supreme Court ruled that where a prompt-notice or consent to settle provision in a UIM policy was breached, the issue is whether a breach actually occurred and if so, whether the insurer suffered prejudice.[4] Ferrando has limited impact on this case. Here, both the liability and excess/umbrella policies required notice "whenever possible" which is distinguishable fromFerrando's prompt-notice provision. Further in this case, the liability policy contained a right to reimbursement clause and not a consent to settle or subrogation clause. Consistently, we conclude Ferrando is inapplicable to the present notice provisions and right to reimbursement clause as these clauses appear in both the liability and excess policies, respectively.
 {¶ 14} However, in this case the excess/umbrella policy did contain a subrogation clause. Consequently, Ferrando is applicable, and we remand to the trial court for a determination consistent with the Supreme Court's holding in Ferrando. As far as the liability policy, the Oakars may avail themselves of the UM/UIM coverage.
 INTRODUCTION {¶ 15} In 1989, St. Paul issued both a liability policy and an excess/umbrella policy to Meridia. On January 20, 1990, Meridia's employee Carol Oakar suffered severe injuries to her person as a result of an automobile accident involving several individuals. At the time of the accident, Oakar was on her way to work. Later, her insurer, Farmers Insurance of Columbus, Inc. (Farmers), paid her medical bills and property damage from this accident.
 {¶ 16} In February 1990, Robert Strong, an individual involved in the accident, filed a claim against Oakar. Her insurer settled the claim for $7,500.
 {¶ 17} In the interim, Oakar filed a claim against tortfeasor Thomas Juhasz; Oakar asked Farmers to waive its subrogation rights, and Farmers authorized a $100,000 settlement of her claim against Juhasz under his policy. Oakar also filed a claim against Strong. As settlement, Strong offered the $12,500 maximum of his policy. Oakar agreed without informing Farmers. In Oakar I, this court made the following observation:
 {¶ 18} "At the time the settlements relevant to this action were made, the law in Ohio precluded Oakar from recovering under the provision in her policy providing for uninsured or underinsured motorists insurance. However, in October 1993, the Ohio Supreme Court decided the case of Savoie v. Grange Mut. Ins. Co. In the third paragraph of the syllabus, the (sic: Ohio) Supreme Court held:
 {¶ 19} "An underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers.
 {¶ 20} "Following Savoie, Oakar and her husband made claims under the uninsured/underinsured provision of her policy. Farmers denied the claims and Oakar and her husband brought an action for the amount of their claim.
 {¶ 21} "The Common Pleas court granted Farmers' renewed motion for summary judgment and denied Oakar's motion for summary judgment without comment."[5]
 {¶ 22} We then reversed the common pleas court's summary judgment orders and held the following:
 {¶ 23} "[T]he law changed under Savoie and allowed Oakar to make a claim. Oakar should not be caused to suffer a forfeiture of that claim for a breach of contract which had no effect at the time it was made. Had the parties been aware that Oakar had a viable underinsurance claim, then under the terms of the policy, `the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment.'"[6]
 {¶ 24} We now review Oakar III to determine whether the Oakars may make a claim against St. Paul under her employer's liability and excess/umbrella policies.
 II. LEGAL STANDARD OF REVIEW {¶ 25} The facts of this case are not in dispute; rather, what law applies and its interpretation is in dispute. In matters of summary judgment, we review the case de novo.[7] As such we are not required to give deference to the trial court's ruling. The presumption is that both the trial court and this court know the applicable law. Summary judgment is a procedural device designed to terminate litigation and avoid a trial where there is nothing to try.[8] Our concern is whether the Oakars are entitled to partial judgment as a matter of law, or whether the trial court properly granted summary judgment to St. Paul.[9]
 {¶ 26} An insurance policy is a contract and the parties' relationship under the insurance policy must be addressed purely in contractual terms.[10] Consequently, this court must reasonably construe the contract terms.[11] Accordingly, when the terms of the insurance contract are reasonably susceptible to more than one interpretation, this court must strictly construe those provisions against the insurer and liberally construe them in the insured's favor.[12] Because the Oakars' assigned errors are related in many respects, we will discuss them in the whole of this opinion, and we conclude they each have merit.
 {¶ 27} In order to clarify the issues as to each policy, we will discuss the liability and excess policies separately.
 III. LIABILITY POLICY {¶ 28} The one million dollar liability policy contained several clauses pertinent to this case; and strikingly, several expected clauses were absent from the policy. It is undisputed that the liability policy contained an uninsured/underinsured motorist clause. It also contained the following language:
 {¶ 29} "If we make a payment under this agreement and a protected person recovers all or part of the damages from someone else, he or she must hold the amount recovered in trust for us and return to us the amount we have paid."
 {¶ 30} This language we interpret as a right to reimbursement. Additionally, the policy contained a notice paragraph under the heading "SOMEONE INJURED OR SOMETHING HAPPENS WHICH CAN RESULT IN A LIABILITY CLAIM." Following this heading, the liability policy stated "tell us or our agent what happened as soon as possible."
 {¶ 31} What is noticeably absent from the policy is language requiring notice of a claim as a precondition to coverage. Additionally, no subrogation clause exists in the liability policy; nor does a clause providing a time limit for bringing a claim or action. As well, the liability policy does not include any restriction limiting coverage to employees acting in the scope of employment. With these facts in perspective, we turn to the law of the case.
 {¶ 32} As we stated earlier, the Oakars are entitled to claim against the liability policy of Carol Oakar's employer. The Oakars' case is identical to Scott-Pontzer v. Liberty Mutual Fire Insurance Co.,[13]
where the Ohio Supreme Court held that as a matter of law a U.M. policy defining "you" as a corporation is ambiguous regardless of other definitions which might include some individuals. The court reasoned a corporate entity acts "only by and through real live persons."[14]
Since a corporation cannot operate a vehicle, the supreme court added that it is logical to conclude that the intent was to extend coverage to its employees.[15] This ambiguity ultimately led the supreme court to conclude that Pontzer, an off-duty employee, was covered under the U.M. policy. In this case, the UM/UIM policy clause contains nearly identical language as in Scott-Pontzer responding to "who is an insured." The policy stated "You Are." This language is ambiguous. As such, Carol Oakar, an employee of Meridia, is covered under its UM/UIM liability policy.
 {¶ 33} St. Paul, however, argues Carol Oakar was not acting within the scope of her employment at the time of the accident. In readingScott-Pontzer, we conclude exclusive language or restrictive language referencing course or scope of employment must be stated in the policy. The absence of, or ambiguity regarding, such language is construed in favor of the insured.[16] Accordingly, we will not conclude Oakar was acting outside the course or scope of her employment when this accident occurred.
 {¶ 34} St. Paul additionally argues the liability policy language obligating them in the event a party "legally entitled to collect from the owner or driver of an insured vehicle" does not apply to the Oakars because they settled their claims. In Martin v. Liberty Mutual InsuranceCo.,[17] Judge Dowd resolved this concern as follows:
 {¶ 35} "Defendant Midwestern first argues that Plaintiffs are barred from recovering any UIM benefits by virtue of the language in both the auto policy and R.C. § 3937.18(A).
 {¶ 36} "The auto policy's UIM endorsement and O.R.C. §3937.18(A) provide that the insurer (Midwestern) will pay damages for bodily injury to an insured person who is `legally entitled to recover' from the owner or operator of an (sic: uninsured) or underinsured motor vehicle. Defendant argues that, because Plaintiffs have settled their claim against the tortfeasor, they are not legally entitled to recover damages from the owner/operator of the motor vehicle. As a result, Defendant contends that Plaintiffs are not entitled to UIM coverage benefits under the policies at issue.
 {¶ 37} "To Defendant's misfortune, the Ohio Supreme Court does not share Defendant's interpretation. Rather, the court stated that the phrase `legally entitled to recover' means the insured must be able to prove the elements of his or her claim against the tortfeasor. * * * As in this case, the plaintiff in [Ohayon v. Safeco Ins. Co. of Ill.,91 Ohio St.3d 474] had already settled with the tortfeasor. Accordingly, Plaintiffs' ability to prove the elements of their claim and recover damages from the tortfeasor is not at issue, and Defendant's argument is without merit."[18]
 {¶ 38} We agree with Judge Dowd's interpretation of present Ohio case law. Accordingly, whether Oakar could legally prove her claim is not at issue.
 {¶ 39} St. Paul further argues that the Oakars cannot recover because they failed to give notice of their claims. In Martin, Judge Dowd recognized that the historical case law in Ohio is that a policy containing ambiguous language as to whether notice is a precondition to coverage must be strictly interpreted in favor of the insured and against the insurer.[19] In this case, the notice language merely requires the Oakars to notify the insured as soon as possible. It does not require notice as a condition precedent to coverage and does not require prompt notice.
 {¶ 40} The notice provision clearly requires notice as soon as possible. It is not a prompt-notice provision.
 {¶ 41} We now turn to the issue regarding subrogation. In this case, the liability policy does not have a subrogation clause. It has a right to reimbursement clause. Subrogation and reimbursement are two different concepts. Subrogation allows the insurance company to recover from the tortfeasor money it paid in benefits on behalf of its insured. Reimbursement allows the insurance company to collect such payments from its insured after the insured has received full settlement from the tortfeasor.[20] The Oakars have stated that they will comply with the reimbursement clause of the liability policy.
 {¶ 42} Finally, we note that the trial court held that the statute of limitations expired in this case. This is a contract action, and as such a 15 year statute of limitations applies. The liability policy did not contain a further limitation regarding when an action must be brought; consequently, we determine the 15 year statute of limitations controls in this case. Because the accident occurred less than 15 years from the date Oakar filed this action, her claim is not time-barred.
 IV. EXCESS POLICY {¶ 43} The excess policy did not contain UM/UIM coverage. InMartin and Scott-Pontzer, the courts recognized the prevailing case law in Ohio is that insurance companies must offer UM/UIM coverage. In Gyoriv. Johnston Coca-Cola Bottling Group, Inc.,[21] the Ohio Supreme Court held no rejection of such coverage can exist absent a written offer of UM/UIM coverage. In this case, we conclude St. Paul failed to comply with R.C. 3937.18 as it existed in 1989, and coverage is provided by operation of law.[22]
 {¶ 44} Unlike Scott-Pontzer, the excess policy in this case does not have a scope of employment exclusion. Consequently, we conclude that Carol Oakar is an insured under the umbrella/excess policy, and we adopt the reasoning utilized above in the liability policy section of this opinion.
 {¶ 45} We also adopt the identical reasoning for the precondition to coverage issues in that section of this opinion as it relates to notice and time limitations of actions. We note again that the excess policy did not have a prompt-notice provision.
 {¶ 46} However, the excess policy does contain a subrogation clause. Consistent with Ferrando, we remand this case to the trial court for a determination of both breach and prejudice.
 V. CONCLUSION {¶ 47} Consequently, we hold that the Oakars may avail themselves of the liability policy because no prompt-notice or subrogation clause is contained therein. However, in the excess policy, a subrogation clause exists, and as such, the trial court consistent with Ferrando must resolve the breach and prejudice issues as they relate to the subrogation clause of this excess policy.
Judgment reversed and remanded.
It is, therefore, considered that said appellants recover of said appellee their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCUR; MICHAEL J. CORRIGAN, P.J., DISSENTS, (SEE DISSENTING OPINION ATTACHED.)
[1] Oakar v. Farmers Ins. of Columbus, Inc. (April 17, 1997), Cuyahoga App. No. 70726,(referring to Savoie v. Grange Mutual Ins. Co. (1993),67 Ohio St.3d 500).
[2] Oakar v. Farmers Ins. of Columbus, Inc. (1998), 129 Ohio App.3d 277, (stating Landis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339,1998-Ohio-387, resolved that R.C. 1343.03(A), rather than R.C. 1343.03(C), governs claims for prejudgment interest).
[3] 98 Ohio St.3d 186.
[4] Id.
[5] (Citations omitted).
[6] Oakar at 11.
[7] Jones v. Shelly Co. (1995), 106 Ohio App.3d 440.
[8] Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1.
[9] See Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826.
[10] Nationwide Mut. v. Marsh (1984), 15 Ohio St.3d 107; Scott-Pontzerv. Liberty Mut. Fire Ins., 85 Ohio St.3d 660, 1999-Ohio-292.
[11] Dealers Diary Prods. Co. v. Royal Ins. Co. (1960),170 Ohio St. 336.
[12] King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208.
[13] (1999), 85 Ohio St.3d 660, 1999-Ohio-292.
[14] Id.
[15] Id.
[16] See King.
[17] (N.D.Ohio. 2001), 187 F. Supp.2d 896
[18] Martin at 902.
[19] Id., citing Weiker v. Motorists Mut. Ins. Co. (1998),82 Ohio St.3d 182, 1998-Ohio-373.
[20] Curp v. Stone (Feb. 16, 1996), Montgomery App. No. 14805.
[21] (1996), 76 Ohio St.3d 565, 1996-Ohio-358.
[22] Martin.